McBride, judge.
The salient facts of this case are these:
On October 11, 1946, the Orleans Shoring Company, through its representative, entered into a written contract with Thomas E. Furlow whereunder the Shoring Company agreed to do certain work at the premises 614 Anson Street, Gretna, Louisiana, for a total sum of $373.50.
John R. Hughes, doing business as Orleans House Raising and Shoring Company, filed this suit against Miss Sena D. Fur-low and Thomas E. Furlow seeking to recover of them jointly and in solido the sum of $410, with six percent interest from May 28, 1947, until paid, and with twenty-five percent attorney’s fees on principal and interest, subject to a credit of $68.08 paid on July 28, 1947.
Hughes in his petition alleged that he is engaged in the house raising and shoring business and that on October 11, 1946, he submitted a contract to Thomas E. Fur-low in the amount of $373.50, which was accepted by Furlow on October 14, 1946, for certain work to be done to the premises 614 Anson Street, Gretna, Louisiana; that thereafter he did certain extra work to the extent of $35; that the work as contemplated by the contract and the extra work was all performed at 614 Anson Street, which is owned and occupied by Miss Sena D. Furlow; that upon the completion of the job the defendants refused to pay the amount due and that thereupon petitioner filed a lien against the property of Miss Sena D. Furlow; that on or about May 27, 1947, Thomas E. Furlow called upon the attorney for Hughes and requested *146 that Miss Sena D. Furlow be permitted to pay the account in installments, and that, he, Furlow, would guarantee the account of his sister by signing a note for the full amount of the contract, namely, $408.50 for the work done and $1.50 for the cost of filing the lien, or a total of $410; that Fur-low signed such note on May 28, 1947, which stipulates for interest at the rate of six percent per annum from date until paid, and with twenty-five percent attorney’s fees on the principal and interest; that the defendants made only one payment on the said note and that on July 28, 1947, in the amount of $68.08; that petitioner has a lien and privilege on the above-described property which he desires to have judicially recognized. The prayer is in accordance with the claims set forth in the petition.
Ultimately there was judgment in favor of Hughes and against Miss Sena D. Fur-low and Thomas E. Furlow, jointly and in solido, for the amounts prayed for; the judgment further recognized the lien and privilege filed by plaintiff against the property 614 Anson Street, Gretna, Louisiana, owned by Miss Sena D. Furlow. An appeal was taken by Miss Furlow from the judgment and the widow and two children of Thomas E. Furlow also appealed.
The judgment insofar as it runs against Miss Sena D. Furlow is manifestly erroneous. She interposed several defenses to plaintiff’s suit, chief of which is that she never at any time had any contractual relations with plaintiff either personally or through an agent, and that Thomas E. Furlow in entering into the contract with plaintiff did so in his own behalf and for his own account. This defense is the only one that need be discussed.
Miss Furlow denied from the witness stand that she ever made any contract with plaintiff or that she ever clothed Thomas E. Furlow with authority to enter into any contract with plaintiff on her behalf. She steadfastly maintained that she did not know there was a contract until after Hughes’s men had started their work at her premises. She admits that her brother told her-men would come to 'the premises to do the work, but that in sending the workmen to the premises her brother acted without her knowledge and “he went to work and made the contract.”
We find nothing in the testimony adduced on behalf of plaintiff that would indicate there was ever any contractual relationship between the plaintiff and Miss Furlow. The only negotiations had were between Hughes and Thomas E. Furlow, and we are convinced that Miss Sena D. Furlow was not a party to any of the negotiations and that Thomas E. Furlow took it upon himself to personally arrange to have the work done at the premises of his sister in Gretna with the intention of paying the contract price himself. We also believe that Hughes well understood this.
The conduct of plaintiff all the more bears out our conclusion. It appears that on March 8, 1947, and again on April 15, 1947, when Hughes had not been able to collect the amount of his bill, his attorney addressed letters to Furlow demanding payment of him. In the earlier letter the attorney requested Furlow to “let me have payment of the contract” and the warning was given in the second letter that suit would be filed unless the account was paid by a certain mentioned date. The giving of the promissory note by Thomas E. Fur-low to Hughes’s attorney resulted.
Furlow testified that the note was given by him for his own account and it was he who gave the note to the attorney and that his sister had nothing to do with the note or with making the one payment on it, and there is absolutely nothing in the testimony which would lead us to believe that Furlow was not answering the questions of Hughes’s attorney truthfully when he made these assertions.
Counsel for Hughes are insistent that Thomas E. Furlow actually was his sister’s agent both in entering into the contract and also in executing the promissory note and giving it to the attorney in representation of the contract price. Counsel point to certain of Miss Furlow’s testimony as bearing out their • contention that there was an agency, but after reading the *147 testimony alluded to we are convinced that no agency existed between Miss Furlow and Thomas E. Furlow. At one point in her testimony when asked if her brother was her agent Miss Furlow did make the answer, “I suppose you could put it that way,” but we notice she followed up this answer with these pertinent assertions:
“ * * * I did not know anything about the contract being made or who would do the work until after it was all made. Mr. Furlow made all that told me the workmen were coming to do the work; and I did not know them until they drove up there.”
Miss Furlow frankly admitted she had talked over the dilapidated condition of her house with her brother, but she insists his making of the arrangements to have plaintiff do the work came as a complete surprise to her. She stated: “I have an unusual brother, who does lots of things for me.” She says she knew nothing of the note or the payment which Thomas E. Furlow made to the attorney thereon, and we believe her statements in that regard.
Of course, if Hughes had discovered that Thomas E. Furlow, with whom he dealt personally, had acted as the agent of Miss Furlow, he could seek her out and hold her liable for the contract price, but sight cannot be lost of the fact that where a party makes a contract with another in his own name the law presumes that he has acted for himself and this presumption would have to be overcome by Hughes, which he has not done.
Under these circumstances, it is not possible for Hughes to be successful in this lawsuit in his attempt to force payment of the contract price by Miss Sena D. Fur-low. Of course, Miss Furlow accepted the benefits of Hughes’s work and unquestionably the results of Hughes’s efforts substantially enhanced the value of her property, nor is there any doubt that she was interested in the ultimate outcome of the work. It appears from her testimony that after Hughes’s men left the job she even went so far as to complain about the quality of some of the work. Notwithstanding all this, however, there is no theory of law upon which Miss Furlow should be compelled to pay the amount of the contract which Hughes had with Thomas E. Furlow. The fact that benefits have accrued to her as a result of the contract does not in the eyes of the law constitute an unjust enrichment on her part, nor does the lone fact that she was benefited have the effect of constituting Furlow as her agent or ne-gotiorum gestor.
In view of our above conclusions it follows that the lien which Hughes filed against Miss Furlow’s property is null and void, and we deem it our duty to order its cancellation in accordance with the prayer of Miss Furlow contained in one of her supplemental answers.
It is disclosed by the record that subsequent to the trial below but prior to the rendition of the judgment, Hughes, through his attorney, appeared and suggested to the court that Thomas E. Furlow was deceased ; that he left his widow, Mrs. Thomas E. Furlow, and two sons, Dr. Thomas E. Furlow, Jr., and Warren Furlow, as sole and only heirs, whom mover desired “be made parties defendant in these proceedings and that, in due course, they stand in judgment in lieu and in place of the late Thomas E. Furlow.” On the same day that the motion was filed an order was rendered by the court below to the effect that Mrs. Furlow and her two children, in their capacities as surviving spouse and sole and only heirs of the defendant, Thomas E. Furlow, “be and they are hereby made parties defendant to this suit and are authorized to prosecute this action in the same manner as the said deceased defendant himself could have done.” A copy of the motion and order was duly served upon each of the three substituted parties.
Notwithstanding the substitution of said persons as parties defendant in lieu of Thomas E. Furlow, deceased, a judgment in plaintiff’s favor was ultimately rendered and signed against Thomas E. Furlow.
In the motion for the appeal Mrs. Thomas E. Furlow, Dr. Thomas E. Furlow, Jr., *148 and Warren Furlow style themselves “defendants”; they suggested that they are aggrieved by the judgment rendered in favor of John R. Hughes, doing business as the Orleans House Raising and Shoring Company; that the said judgment is contrary to the law and the evidence and that they desired to appeal suspensively and devolutively therefrom to this court.
Although their right is not challenged, we must mention in passing that unquestionably the said three appellants have such an interest as would entitle them to appeal from the judgment against their deceased husband and father, Thomas E. Furlow. Plaintiff himself had them substituted as parties defendant in the cause in his place and stead. It is not necessary to determine, and we make no decision respecting whether Mrs. Furlow and her two children have expressly or tacitly accepted the succession of Thomas E. Furlow, our opinion being that the fact of their having been made defendants at plaintiff’s behest gives them the right to appeal the same as any other party.
However, the widow and children of Furlow have filed no brief in this court nor were they present or represented by counsel when argument was heard. However, their appeal is before us and it appears from the face of the record that the judgment in favor of plaintiff and against Thomas E. Furlow is an absolute nullity, which should be decreed. Nothing is better settled than that a judgment against a party deceased is null and void and its nullity can be declared at the instance of any interested party. See Sanders & Son v. Schilling, 123 La. 1009, 49 So. 689.
However, as Furlow’s widow and children had been substituted as parties defendant prior to the rendition of the 'judgment, plaintiff’s demands are still pending against them, and we believe that the matter should be remanded to the trial court so that further proceedings may be had in the case in accordance with law.
For the reasons assigned, it is decreed that the judgment appealed from insofar as it runs against Miss Sena D. Furlow and casts her for the amounts sued for and recognizes the purported lien in Mortgage Book 142 folio 420, Parish of Jefferson, against her property be and the same is hereby reversed at the cost of plaintiff, and the said lien is ordered cancelled and erased, and plaintiff’s suit as against Miss Sena D. Furlow is dismissed at his cost.
It is further ordered, adjudged and decreed that the judgment insofar as it runs against Thomas E. Furlow be and it is declared null and void and of no effect and the cause is remanded to the Twenty-fourth Judicial District Court for the Parish of Jefferson in order that further proceedings in accordance with law and not inconsistent with our views may be had therein. The assessment of all costs, both in the court of origin and in this court, in connection with plaintiff’s claim against Thomas E. Furlow and those substituted as parties defendant in his stead is to await final determination of the matter.
Reversed in part and remanded.
JANVIER, J., absent.